No. 13,963.

FISHER, ASSIGNEE *v.* NORMAN APARTMENTS, INC. ET AL.
(72 P. [2d] 1092)

Decided June 21, 1937.   Rehearing denied October 18, 1937.

Mr. A. IRVING SOBOL, Mr. A. R. MORRISON, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendants in error other than Norman Apartments, Inc.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE plaintiff in error herein referred to as Fisher, or the judgment creditor, is the assignee of a judgment rendered in favor of the Tritch Hardware Company against Norman Apartments, Inc. Fisher procured execution to be issued on the judgment and caused garnishee summons to be served on one B. F. Englander and the Colorado National Bank as garnishees. All of the interrogatories propounded in the summonses were answered by the garnishees in the negative. Fisher traversed the answers. The International Trust Company filed a petition in intervention claiming the "credits, issues, debts, choses in action and other personal property" with which the Colorado National Bank of Denver and B. F. Englander as garnishees are sought by the plaintiff herein to be charged.

From a judgment on the traverse in favor of the garnishees and on the petition in intervention in favor of the trust company, Fisher prosecutes this writ of error.

A chronology of the transactions preceding and subsequent to the garnishment is necessary to an understanding of the issues involved and to a determination of the applicable legal principles.

1. August 15, 1923, William N. Bowman and Alice M. Bowman executed a deed of trust to the International Trust Company covering certain property on which the Norman Apartments now are located securing a bond issue of $350,000.

2. October 12, 1923, the Bowmans by warranty deed, recorded November 12, 1923, conveyed the property covered by the deed of trust to the Norman Apartments, Inc., which assumed and agreed to pay the encumbrance.

3. September 4, 1931, the Tritch Hardware Company secured the judgment against the Norman Apartments, Inc., on which the summons in garnishment issued.

4. October 12, 1932, an agreement, hereinafter set out at length, was entered into between the Bowmans, the Norman Apartments, Inc., and certain persons constituting a "bondholders' protective committee," which is herein referred to as the bondholders' committee.

5. November 1, 1932, the trust company on the request of the bondholders' committee—holders of more than one-third of all the bonds then outstanding—declared all of the unpaid bonds secured by said deed of trust to be due and payable immediately.

6. November 28, 1932, a foreclosure suit was instituted by the trust company, against the Bowmans, the Norman Apartments, Inc., the members of the bondholders' committee and unknown persons consisting of the unknown holders of outstanding bonds.

7. November 28, 1932, notice of lis pendens was filed in the office of the county clerk and recorder.

8. July 15, 1935, the bondholders' committee filed its answer setting up that the committee had been in possession of the Norman Apartments under and by virtue of the contract of October 12, 1932, and offering to account for all monies unexpended deposited from October 12, 1932, in the Colorado National Bank subject to being paid out as provided in said contract.

9. July 15, 1935, the court entered a decree of foreclosure.

10. July 31, 1935, the judgment of the Tritch Hardware Company was assigned to Fisher.

11. September 17, 1935, execution issued on that judgment.

12. September 18, 1935, the garnishee summonses above mentioned were served.

13. November 26, 1935, the order confirming the sale was entered.

Following the order of sale of July 15, the Norman Apartments, Inc., filed a petition in bankruptcy. The bankruptcy court temporarily enjoined further proceedings, but afterwards dissolved the restraining order and

permitted the sale. On petition of the International Trust Company and the bondholders' committee the bankruptcy court, on January 23, 1936, authorized the bondholders' committee to pay to the International Trust Company as trustee under the deed of trust the monies on deposit in the Colorado National Bank sought to be reached by Fisher by garnishment.

The trust deed executed by the Bowmans after describing the real estate contained the following: ''Together with any and all buildings, improvements and appurtenances now and at any time hereafter constructed or placed upon said land or any part thereof, * * * together with all the rents, uses and privileges thereof, which are hereby assigned, * * * and together with all and singular the personal property of every kind and nature whatsoever contained or hereafter contained in said building or buildings, and used or to be used in connection with the carrying on of an hotel business in said building or buildings.''

The contract of October 12, 1932, was in words as follows:

''This agreement made and entered into this 12th day of October, A. D. 1932 by and between the Norman Apartments, Inc., a Colorado Corporation, and William N. Bowman, parties of the first part, and C. L. Holman, Lynton T. Block, Warren Browne, A. D. Plamondon and James R. D. Stevenson, constituting the Bondholders' Protective Committee, parties of the second part; Witnesseth:

''Whereas, the Norman Apartments, Inc., is the owner of the property known as 'The Norman Apartments,' in Denver, Colorado, subject to an encumbrance represented by first mortgage bonds in the principal sum of approximately two hundred and forty-four thousand dollars ($244,000), and also subject to a second encumbrance securing the payment of another bonded indebtedness, and William N. Bowman is the president and a stock-

holder and a representative of other stockholders of the said Norman Apartments, Inc., and

"Whereas, said Norman Apartments, Inc., have defaulted in the payment of interest on said first mortgage bonds, a certain amount of matured principal, and in the payment of taxes on said property, and

"Whereas, a Protective Committee consisting of C. L. Holman (Chairman), Lynton T. Block, Warren Browne, A. D. Plamondon and James R. D. Stevenson, has been formed for the holders of the first mortgage bonds of the Norman Apartments, Inc., and the committee has requested the holders of said bonds to deposit the same with said committee for the protection of said bondholders and for the purpose of either refinancing the bonded indebtedness on said property pursuant to a plan to be submitted to the bondholders when a sufficient number of said bonds shall have been deposited with said committee, or for the purpose of foreclosing, and

"Whereas, the Bondholders' Committee and the Norman Apartments, Inc., and William N. Bowman believe it to be to the best interests of all parties interested that the income and rents from said property be transferred to a depository satisfactory to all parties herein, and to be paid out only upon the joint signature of a resident manager of said apartments and of a representative for said Bondholders' Committee for the purposes hereinafter set forth.

"Now, Therefore, in consideration of the premises and in further consideration of the execution of this instrument by all of the said parties and of their promises herein contained, running from one to the other or others of them, they do hereby promise and agree, as follows, to wit:

"That during the time this agreement shall be in force and effect, B. F. Englander, if the said Norman Apartments, Inc., so desires, may be continued in the employ of said company as the resident manager of said apart-

ments and to perform the usual and customary duties of a resident manager of an apartment building, except as herein stated, * * * That as such resident manager he shall act as agent for the Norman Apartments, Inc., and shall be one of the signers of all checks drawn on the funds deposited with said depository hereinabove referred to.

"That W. D. Morrison shall act as the agent or representative of said Bondholders' Committee so long as he shall be satisfactory to it, and in the event that he may fail or refuse to act or prove to be unsatisfactory, the said committee may, from time to time, appoint some other person desirable to it as its agent or representative, at the agreed salary of $75.00 per month to be paid out of the annual income from said property, which said salary shall also be payment for services performed as auditor for Norman Apartments, Inc.

"All rentals and income, including all cash now on hand, from said Norman Apartments, Inc., and said garage connected therewith, of any kind or nature, whether past due or current, as the same are collected shall be deposited with the Colorado National Bank of Denver, Colorado, as such depository.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"That all checks drawn on said moneys deposited with said depository shall be checked out and disbursed only upon checks signed by B. F. Englander as a representative of the Norman Apartments, or his successor, and countersigned by said W. D. Morrison, or his successor, provided, however, that the said funds shall be checked out, used and disbursed for the following purposes, and none other, in the following order of priority, to wit:

"First: To pay the current bills for operating expenses of said Norman Apartments, Inc. That there may be no misunderstanding as to what expenses are payable hereunder, it is agreed that no unusual or extraordinary expenses shall be incurred by the Norman Apartments, Inc., or by any one on its behalf relating to

the said apartment building, and the operation thereof, without first procuring the approval in writing of said representative, or Denver counsel of said Bondholders' Committee;

"Second: To pay taxes and special improvement assessments against the said property, it being understood that the particular taxes and special assessments so paid from time to time shall first be such as are bearing the highest rate of interest;

"Third: To pay the balance, if any, to the Trustee under the said mortgage, or deed of trust, for the benefit of its bondholder beneficiaries, as and when there shall be any balance available therefor;

"That the arrangements herein provided for and the promises of the parties hereto herein made shall remain in full force and effect so long as the said first mortgage indebtedness be unpaid, or until after said encumbrance against said property shall be refinanced, or there shall be a foreclosure of said first encumbrance and the expiration of all rights of redemption therefrom, unless all rights of redemption be waived and relinquished.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"It is further agreed that B. F. Englander as resident manager of said Norman Apartments, upon request of the said Protective Committee, or its counsel, shall notify any tenant who shall be delinquent in his rent to vacate the premises occupied by him and in the event suit is necessary to oust any tenant, or collect any unpaid rents, or other accounts receivable, Denver counsel for the Bondholders' Protective Committee shall have the right to bring such suit in the name of the Norman Apartments, Inc.

"That this instrument shall be construed as made for the benefit of and to be binding upon the successors and assigns of said Norman Apartments, Inc., and of the said Protective Committee, and for the benefit of and to be binding upon the personal representatives and assigns of William N. Bowman.

"In witness whereof, the parties hereto have executed this instrument in triplicate, the day and year first hereinabove written."

Pursuant to the foregoing contract an account was opened with the Colorado National Bank as follows: "The Colorado National Bank, Denver, Colorado, in Account with Bondholders' Protective Committee for the Norman Apartments, Inc." Checks on this account were signed in accordance with the agreement by Englander and countersigned by Morrison.

It will be observed that nowhere in the agreement are there any words which expressly assign the rents from the Norman Apartments to the bondholders' committee. The deposits in the bank were made in the name of the bondholders' committee, not as owner of the account, but "Bondholders' Protective Committee, for the Norman Apartments, Inc." The contract recites the default in bond payments; the formation of a protective committee; and the desire to have a depository mutually satisfactory to all parties to the agreement. It further provides that Englander, so long as agreeable to the Norman Apartments, Inc., shall act as *resident manager* and *agent* of Norman Apartments, Inc.; that Morrison shall act as agent of the bondholders' committee and that all rentals and income shall be deposited in the Colorado National Bank to be "checked out, used and disbursed," first, to pay operating expenses; second, to pay general and special taxes, and third, to pay the trustee under the deed of trust "for the benefit of its bondholder beneficiaries, as and when there shall be any balance available therefor." Suits to oust tenants were to be brought in the name of the Norman Apartments, Inc. Denver counsel for the bondholders' committee were to prosecute such suits.

The contract expressly provides that it shall be construed as made for the benefit of the Bowmans, Norman Apartments, Inc., and the Protective Committee. It does not provide that it shall be construed as made for

the benefit of the trustee in the deed of trust and no attempt to so construe it was made until the trustee, International Trust Company, appeared resisting the garnishment and, as intervener, claiming the funds in the bank deposited pursuant to the agreement, and the undeposited funds in the hands of Englander.

The evidence is to the effect that in all matters relating to the management of the apartments Englander carried them on exactly as before even using the same form of leases and monthly statements.

The complaint in foreclosure filed November 28, 1932, makes no reference to rents or to the contract. Until the bondholders' committee answered on July 15, 1935 —the very day the decree for sale was entered—claiming it had been in possession, there was nothing in the pleadings that would have given the plaintiff in foreclosure any basis whatever for claiming the possession or rents prior to that date; therefore, it could have no such right, unless by virtue of the contract. If the contract was valid on that date as against the claims of a judgment creditor of the Norman Apartments, Inc., no judgment of court was necessary to authorize the committee to pay over the funds to the trustee in accordance with the contract. If the contract was not valid for this purpose the decree of court in a proceeding to which the judgment creditor was not a party could not give the contract any validity against him not already inherent in it. The status of the judgment creditor, the Norman Apartments, Inc., the bondholders' committee and the foreclosing trustee, with reference to each other on the date of foreclosure must rest upon the contract.

The contract, as we view it, is not an assignment of the rents to become due. Clearly the retention of an agent and a resident manager to perform all the duties usually and customarily performed by such an employee; the renting of apartments by him in the name of the corporation and collection of rentals; notifying delinquent tenants and suing in the name of the corporation to collect

unpaid rents or bills receivable, is consistent with possession remaining in the corporation and inconsistent with either an assignment of the rents or bills receivable or a surrender of possession to the bondholders' committee. Such an uncontroverted state of facts does not furnish support for the finding and decree of the court that there was an assignment of rents or a surrender of possession so far as the judgment creditor is concerned. The contract was a restriction on expenditures which might be made voluntarily by the manager or by the corporation, but it did not, and did not purport to, pass title to the funds or determine the rights of judgment creditors to proceed against them for satisfaction of their claims.

It is said that the rents were assigned in the deed of trust. This, however, does not operate to give the mortgagee a right to such rents except under certain definite conditions. If the mortgagor abandons the possession, which was not done in this case, the mortgagee may take possession and collect the rents. Where rents are assigned to the mortgagee a receiver may be appointed to take possession for him and collect the rents for his benefit; but this was not done. Neither under general principles of equity, well recognized in foreclosure proceedings, nor under our statute (if the same applies to prior mortgages which we need not determine) is the mortgagee entitled to the rent here involved. "When an action or proceeding has been commenced to foreclose a mortgage, trust deed or other instrument securing an indebtedness, a receiver of the property affected, shall be appointed upon application at any time prior to the sale, if it appears that the security is clearly inadequate, or that the premises are in danger of being materially injured or reduced in value as security, by removal, destruction, deterioration, accumulation of prior liens or otherwise, so as to render the security inadequate.

"If the facts would justify the appointment of a re-

ceiver under this section, but one is not applied for, and if the premises be abandoned by the owner thereof, the holder of the lien may take possession until the sale, and shall be subject to the same duties and liabilities for the care of the premises and for the application of the rents and profits as would a receiver.'' Sec. 8, chapter 151, S. L. 1929 (Sec. 165, c. 40, C. S. A. '35).

In Jones on Mortgages (8th ed.) section 976, it is said: ''A mortgagee before entry has no specific lien upon the rents and profits of the mortgaged land unless he has in the mortgage stipulated for a specific pledge of them as part of his security. He has no claim upon them until he actually takes possession of the premises under his mortgage. Unless the mortgage expressly includes the rents of the mortgaged premises, the mortgagee is not entitled to them; and the mortgagor may collect and use them, until a receiver is appointed, upon proper showing. Assignments of rents to the mortgagee, which give him control of the premises, are not looked on with favor by the courts; and even when the mortgage expressly covers the land, 'together with rents, issues and profits,' the language will be construed as referring only to rents and profits accruing after entry by the mortgagee, in the absence of specific language pledging the rents accruing before default and while the mortgagor is in possession.''

Section 556, Wiltsie on Mortgage Foreclosure (4th ed.) reads as follows: ''On a condition broken, by which a mortgagee is authorized to commence a foreclosure, he will have an equitable lien upon the rents and profits of the mortgaged property, if it is an inadequate security for the debt, which lien may be enforced by proper proceedings; but if he makes no demand for the rents, and takes no steps to have them applied to his debt, the mortgagor can continue to collect them, because until the mortgagee takes possession of the premises or files a bill for foreclosure and procures the appointment of a receiver, the mortgagor is 'owner to all the world,' and is entitled to all the profits made.

"A mortgage may contain a specific provision assigning the rents and profits of the mortgaged premises as well as the land itself as security for the indebtedness. Such a provision does not ordinarily entitle the holder of the mortgage to specific rents and profits while the property is in possession of the mortgagor or persons claiming under him even though there has been a default. A provision pledging rents and profits, after default, merely entitles the mortgagee to recover such rents and profits by taking possession or by means of a receiver."

It is not necessary to determine under the issues of this case, and we do not determine, whether a mortgagee who has a passive lien on the rents by virtue of their assignment in the mortgage, may, by assignment from the mortgagor, obtain a right to the rents superior to that of other creditors of the mortgagor. The contract here involved did not constitute an assignment of such rents for it left the right to collect them in the mortgagor, the Norman Apartments, Inc., and gave no right to the bondholders' committee to collect them. The contract relates merely to the future disposition of the rents after the mortgagor, still in the exercise of his right under the passive lien of the mortgagee, has collected them.

The bondholders' committee in its answer petitions the court to retain jurisdiction of the cause "after the foreclosure sale to be decreed herein, * * * for the purpose * * * of permitting these defendants [bondholders' committee] to petition the court to be heard upon all matters relating to their *trust duties and obligations* * * *." (Italics ours.) On the date of this answer the committee held the funds in question and its members allege they had possession of the property. All the rights they had depended on the contract. If any trust duties or obligations rested on them they came into existence by virtue of the contract, which provides specifically that it shall be construed as being for the benefit of, among others, the Norman Apartments. If the funds in the hands of

the bondholders' committee were held in trust, they were so held as much for the Norman Apartments as for the other parties to the contract or for the trustee under the deed of trust. They had not been applied to the payment of the bonds and no preference of creditors by payment had been made. The contract itself did not constitute a preferred payment; it was but the means by which a preference was intended later to be effected.

It was said in *Kuppenheimer & Co. v. Mornin*, 78 Fed. (2d) 261: "There is, of course, a vast difference in law between an order to pay a debt out of a particular fund and a promise to pay out of such fund. That the former, when accepted, is binding, is almost, if not quite hornbook law. That the latter is not binding is well-nigh as well settled." In the instant case there was no order to pay the rents to the bondholders. There was a trust created for the purpose of preferring certain creditors; namely, those who became such in the current operation of the business, and to pay the balance of the rents, and transferred bank account, if any, to the trustee and to no one else. In the case just cited there was a promise not to sell any lands owned by the promisor until a certain note was paid or if they were sold or mortgaged to apply the proceeds to payment of the note. Part of the lands was encumbered and a part was sold and the proceeds were not so applied. The case holds that the innocent mortgagee and purchaser secured a lien and good title, and that the contract not to convey or to pay from the proceeds of conveyance, did not operate as an equitable assignment of the proceeds so that they might be reached in the hands of a creditor of the grantor who accepted the proceeds from the mortgage and sale in payment of his debt with knowledge of the contract. We see no right in the creditor so paid in that case superior to that of the judgment creditor in the instant case. In neither had the funds been applied to the objective specified in the contract. In the Kuppenheimer case a general creditor was voluntarily paid and was permitted to

retain the funds; in the instant case the creditor fixed his right to the funds by garnishment, and should be permitted to have recourse to them for the payment of his judgment.

Mr. Justice Swayne in *Christmas v. Russell,* 14 Wallace, 69, said: "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—*any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee.* The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor." (Italics ours.)

In the instant case Englander as agent of the Norman Apartments Inc. had the power to collect. The bank could safely pay only on checks signed by Englander as such agent of the Norman Apartments, Inc., and since the Norman Apartments, Inc. had a right in the fund to the extent of having its current expenses paid from it the bank at no time could safely pay out of such fund without the consent of the Norman Apartments, Inc. Such of the funds in the hands of the committee as were to be used for paying current bills of the Norman Apartments, Inc., were held in trust for the Norman Apartments. The court in its order for sale recognized them as trust funds to be first used, under the terms of the contract, for making payments to certain preferred creditors. It was only by virtue of the contract that the court assumed to direct that such payments be made. Before they were made the garnishment was served. To the amount of the funds in its hands that it was obligated to pay on the current bills of the Norman Apartments, Inc., there can be no question that the bondholders' committee had funds in its hands *belonging* to the Norman

Apartments and after garnishment it would pay such current creditors at its peril; nor will the order of court to make such payment in a proceeding in which the judgment creditor was not a party protect the garnishees for the court has jurisdiction to order the disposition only of funds that came under its jurisdiction by virtue of the foreclosure proceedings.

It is worthy of note that the contract called for the redeposit with the Colorado National Bank of the moneys of the Norman Apartments on deposit with the American National Bank *at the time the contract was entered into.* The record shows this was done, but it is silent as to the amount in the American National Bank balance when it was transferred. Certainly it is a novel proceeding and a radical extension of the powers of a court of equity if in a foreclosure proceeding it may foreclose not only on the property described in the deed of trust but on the bank account of the grantor also, and over the objection of a judgment creditor seeking to satisfy his judgment. Such is the effect of the judgment in this case.

The trust deed securing the bonds was not a corporation trust deed under section 5087, C. L. 1921 (Sec. 6, c. 32, C. S. A. '35), but a trust deed by Bowman and his wife which the corporation assumed. It contained a provision that any personal property owned or thereafter acquired and used by the grantors in the conduct of an hotel business in the buildings, without specifically describing it, was pledged as security. As to such personal property the trust deed was a chattel mortgage (Sec. 5099, C. L. 1921 [sec. 20, c. 32, C. S. A. '35]), and since the property was not described so it could be identified, nor possession taken prior to service of garnishment, as to such property it was not notice and was void as to the judgment creditor. *Klug v. Munce,* 40 Colo. 276, 90 Pac. 603; *Simonson v. McHenry,* 41 Colo. 508, 92 Pac. 906.

The money in the hands of Englander who, so far as the contract and record discloses, had no other status than that of agent of the Norman Apartments, Inc., was

the money of his principal and subject to garnishment by a judgment creditor of his principal. He was not holding it for the bondholders' committee. He was not obligated to take orders as to its disposition from the committee. His duty was to his principal. If he had refused to pay it to the bondholders' committee its recourse on the contract was against the Norman Apartments, Inc., and not against Englander. If it had so proceeded and procured judgment against the Norman Apartments, Inc. for the money the latter had agreed to pay it under the contract, it would be absurd to contend that on its judgment for breach of the contract it could not reach the fourteen hundred dollars in the hands of Englander, its judgment debtor's agent, by a garnishment served on him. The judgment creditor here stands in the same position and has the same rights.

The judgment is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

MR. JUSTICE HILLIARD not participating. MR. JUSTICE BOUCK dissents.

## ON PETITION FOR REHEARING.

MR. JUSTICE BOUCK, dissenting.

I reluctantly dissent. My views are, of course, known to my colleagues. Were it not that I fear the creation of a bad precedent by the majority opinion herein, I would merely note my dissent now as I did when the original decision was announced; for the reason given, however, I feel constrained to state in writing the grounds of my original dissent, which are the basis of my belief that the majority's present denial of a rehearing is not justified under any sound principle of law, equity or justice. Some of the unfortunate results flowing from the majority opinion, as I read it, are these: (1) It deliberately nullifies the sanction of a valid contract. (2) It gives the garnishing creditors of a principal

debtor what the debtor himself could not demand. (3) It usurps the functions of the trial court by upsetting the latter's findings of fact. (4) It ignores the res judicata represented by direct and final decisions of both the state and the federal courts on the very subjects involved in this case.

1. The contract set out in the opinion was entered into in 1932 between Bowman, an original mortgagor, and Norman Apartments, Inc., his successor in interest, on the one hand, and those representing the mortgagees under the first mortgage upon the apartment property, on the other. The validity of the contract is not questioned. There is no suggestion anywhere of fraud, accident or mistake in its making or in its performance. The original parties were bound by its terms. They undeviatingly acted upon it and in accordance with it. Presumably it possessed every sanction given to validly existing contractual rights. That contract commendably undertook to substitute for the expensive procedure of receivership (and the first mortgage creditors are conceded to have been entitled to a receiver if they had chosen to apply therefor) a fair and effective method of handling the income from the property so as not to be within the reach or control of the mortgagor, but to be promptly deposited in the defendant bank and applied by the bank in strict accordance with the terms of the first mortgage, which had been executed nearly twelve years before the garnishment was attempted under the judgment now owned by plaintiff in error Fisher. That mortgage covered not only the lands and the improvements thereon but "all the rents, uses, and privileges thereof, which are hereby assigned." The meaning of the contract seems plain, and I fail to see how the instrument could lend itself to such an unnatural interpretation as is placed upon it by the majority opinion.

If a receiver had been appointed by a court, Fisher would admittedly have had no right whatever to assets of Norman Apartments, Inc., as against the claimants under

the first or second mortgage, or as against the creditors arising in the course and by reason of the receivers' operating the apartments. The aforesaid contract properly attempted to accomplish the same result. Nothing in the law forbids such a contract or requires it to be recorded. The contract should therefore have been upheld as against the garnishing creditors. See *Peterson v. Marple,* 75 Colo. 389, 225 Pac. 814, and the following authorities there cited with approval: *Barnes v. Shattuck,* 13 Ariz. 338, 114 Pac. 952; *McDaniels v. Maxwell,* 21 Ore. 202, 27 Pac. 952, 98 Am. St. Rep. 740; 3 Pomeroy Eq. Jur. (3d ed.), §1280.

The decision of the court, in the face of the situation so existing, confers a preference upon a single subsequent creditor, advancing him ahead of both the first and the second mortgage, and ahead of all other creditors, and diverting to him as a special beneficiary the very income created by other creditors' services and supplies found necessary to continue operation of the apartments and thus to conserve the property.

2. In view of the fact that the total assets fall short of paying the mortgage creditors themselves, the decision of this court amounts to an abrogation of long established legal liens arising out of lawful contracts, and to giving to the process of garnishment a power unheard of before. It is settled law in Colorado that a garnishing creditor can get no more from the garnishee than could the primary debtor himself if the latter were to sue the garnishee. *Universal Fire Ins. Co. v. Tabor,* 16 Colo. 531, 27 Pac. 890; *Collins v. Thuringer,* 92 Colo. 433, 21 P. (2d) 709. Norman Apartments, Inc., the debtor here, could not have recovered the funds in question.

3. That the decision is an unjustifiable interference with the lower court's functions as a fact-finding tribunal is apparent from the record. The findings below based upon the inviolability of a contract in full force, and upon the limitations to which all garnishments have hitherto been subject, and upon res judicata, have been

supplanted by pronouncements not resting upon any principles heretofore known in our state. The lack of pertinent citations in support of those pronouncements is significant.

4. Litigation directly involving the issue now before this court has gone into final judgment in the foreclosure suit itself. With full jurisdiction of the subject matter and of all creditors of Norman Apartments, Inc., including Fisher, the district court of Denver decided that the funds in question were not the property of the Apartments, but were the property of the bondholders' committee as representatives of the creditors under the first mortgage. From that decision no appeal was taken. A like judgment was entered by the federal district court of Colorado in the Norman Apartments bankruptcy case, wherein Fisher was an actual party. The federal district court ruled the same way in a second case. In all instances the question was a direct issue. The second federal district court judgment was affirmed by the circuit court of appeals of the tenth circuit. *Morrison v. Rockhill Improvement Co.*, 91 Fed. (2d) 639, decided on August 10, 1937. These adjudications, I think, clearly constitute res judicata.

Time is not available for further discussion. The foregoing is therefore respectfully submitted as my statement of dissent.