No. 14,392.

THE NORMAN, INC. ET AL. *v.* HOLMAN ET AL.
(97 P. [2d] 739)

Decided December 11, 1939.

Mr. ARTHUR R. MORRISON, for plaintiffs in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendants in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE matter here presented arises out of alleged errors of the district court in sustaining demurrers of Holman, Block, and Browne as a bondholders' protective committee, to certain petitions filed by the redemptioner and assignee of the certificate of redemption seeking an

accounting of an action to foreclose a first bond mortgage on the Norman Apartments.

The fact situation out of which the issue before us for determination grew is complicated. The facts are to be gleamed from the petitions and the record preceding the filing of the petitions. The Norman Apartments was sold at foreclosure sale to satisfy a defaulted issue of first mortgage bonds. In the order for sale the court fixed an upset price of $140,000 if sold without the net rents and use of the property for the period of redemption and of $150,000 if sold with the rents and use of the property for the redemption period. Holman, Block, and Browne as joint tenants and not as tenants in common bid $164,000 for the property with the rents and use for the period of redemption. Theretofore no receiver had been appointed by the court to collect the rents, nor was any such receiver ever appointed. The said Holman, Block, and Browne prior to the date of sale at which they purchased as individuals and for a long time prior to the beginning of foreclosure had constituted a bondholders' protective committee and by written agreement with the Norman Apartments, Inc., owner of the property in foreclosure, had collected the income from the property, paid the running expenses, and held the net proceeds in trust for the first mortgage bondholders. This contract was to, and did, remain in force and effect until the period of redemption had expired. At all times the rents were collected and the running expenses paid, both before and after the beginning of the period of redemption, as provided in the contract. What Holman, Block, and Browne as a bondholders' protective committee did with the net proceeds before the beginning of the period of redemption is no concern of the plaintiffs in error. We assume the net proceeds up to that time were accounted for to the trustee for the first mortgage bondholders. After Holman, Block, and Browne in their individual capacity bid in the property and the rents and use thereof for the redemption period

at the foreclosure sale under the second plan provided in the order of sale, and received a certificate of purchase from the special master, which they assigned to the International Trust Company, the plaintiff in the foreclosure suit, they still continued to collect the rents under the contract into which they as a protective committee had entered with the Norman Apartments, Inc. They contend, however, that during this period they were collecting for themselves as individuals revenues for which they had paid $10,000 and for which now they are not accountable to the plaintiffs in error and, if accountable, that the court has no jurisdiction to compel them to account as a bondholders' committee in this proceeding.

In order to determine the correctness of their contentions it is necessary to determine first who the petitioners, the plaintiffs in error, are. The Rockhill Improvement Company, a corporation, is the holder of certain second mortgage bonds secured by a second mortgage lien on the Norman Apartments. The Norman, Inc., is a new corporation created after the foreclosure as a means to effect a reorganization of the old company, The Norman Apartments, Inc., under section 77B of the national bankruptcy act by authorization of the United States District Court for the District of Colorado. In furtherance of said plan of reorganization the Rockhill Improvement Company redeemed from the special master's sale to Holman, Block, and Browne, paying to the special master for the use of the purchasers or their assigns the sum of $168,947.33, which was the full amount of the purchase price for said property with the rents and use during the period of redemption paid by Holman, Block, and Browne to the special master, together with interest thereon at the legal rate. The special master, upon petition to the court, was ordered to accept redemption pursuant to chapter 151 of the 1929 Colorado Session Laws. Section 4 thereof, being section 161, chapter 40, '35 C. S. A., is, so far as here material, as follows:

"If redemption be made by a lienor, his certificate of redemption, duly recorded, operates as an assignment to him of the estate and interest acquired by the purchaser at the sale, subject, however to the rights of persons who may be entitled subsequently to redeem."

The record does not disclose that the correctness of the above order has been called in question. We assume that the special master, for he so reported, received the full amount of the redemption money paid by the Rockhill Improvement Company. The certificate of redemption was issued to that company and by mesne assignments came to The Norman, Inc., to which last named corporation the master's deed issued. The Rockhill Company having paid to redeem the property the full purchase price of $164,000 and interest, either Holman, Block, and Browne as a bondholders' protective committee or Holman, Block, and Browne in their individual capacity, or the International Trust Company, or two or more of them now retain both the $10,000 and interest on it for the redemption period, which was paid at the foreclosure sale for the privilege of collecting the rents and also the rents that were collected. The petition shows that Holman, Block, and Browne as individuals deposited part of the rent money in an account opened by them in their individual capacity after they bought the property and the rents at the special master's sale and a part in the account which they had previously opened as a bondholders' protective committee. To the petitions filed by The Norman, Inc., and the Rockhill Improvement Company to compel an accounting for such rents collected and alleged to be in said two accounts, demurrers were filed by Holman, Block, and Browne as the bondholders' protective committee upon the grounds:

"(1) That the said second amended petition does not state facts sufficient to constitute a cause of action or to entitle the petitioner to any relief thereon, (2) that the petitioner is not a party to this cause, entitled to file

said petition, (3) that the said petition is ambiguous, unintelligible and uncertain, and (4) it has been established and determined, as the law of this case, that the said petition should be denied."

The court sustained the demurrers and dismissed the petitions. To do so on any of the specified grounds was error. It is alleged, and for the purposes of the demurrers of course admitted, that Holman, Block, and Browne deposited part of the rents for the redemption period in an account entitled "Bondholders' Protective Committee for the Norman Apartments, Inc." For such amount of rents as they so deposited as a protective committee they should account to petitioners. To this extent the petition states a cause of action against them in their fiduciary capacity as a protective committee.

It is contended that petitioners have not been made parties, that they are not parties to the suit, and should not be heard. When Holman, Block, and Browne as individuals bid at the sale and a certificate of purchase was issued to them, they, by virtue of such bid and the receipt of the certificate of purchase, became parties to the foreclosure proceedings as individuals and subject to the jurisdiction of the court for all purposes connected with the issuance of a deed and the redemption by junior lienors entitled under the law to redeem. In *Watrous v. Hilliard,* 38 Colo. 255, 88 Pac. 185, we said: "By the purchase at a judicial sale, the purchaser becomes a party to the proceedings in which the sale is made. Now, whoever makes himself a party to the proceedings of a court of general equity jurisdiction, and undertakes to do a particular thing under its decretal orders, may be compelled to perform what he has undertaken. The proper tribunal to compel it is the same court, and, by a motion in the same cause, in which the undertaking occurred.—Rorer on Judicial Sales, §148." See, also, 35 C. J. 72, §113.

By the same reasoning when the redemptioners

paid their money to the special master they likewise became subject to the jurisdiction of the court as to any and all matters which it was or might become their duty to do or perform by virtue of their status as such redemptioners, and, being subject to the jurisdiction of the courts for the purpose of having burdens imposed, they must be accorded the reciprocal right to invoke such jurisdiction to enforce performance by other parties to the action of such duties as are owing them. It is immaterial whether those proceeding or proceeded against originally were parties or became such by acquiring an interest in the subject matter over which the court had general equity jurisdiction.

■ ■ The direct liability of Holman, Block, and Browne to account to petitioners for all the moneys received by them from the collection of the rents in their individual capacity is not before us, for under the assignments of error only the obligation of Holman, Block, and Browne as a bondholders' committee to account is in issue. Since it is alleged that a part of the rents so collected were deposited in the bondholders' protective committee bank account, it is material to a determination of the liability of the three as a committee to account for the same to find whether they, as members of a committee, had knowledge when they deposited such rents collected during the redemption period in the committee bank account that they were receiving moneys to which those from whom they as a committee received them—in this case the members of the committee in their individual capacity—had only a contingent right, a right that would become absolute only upon there being no redemption within the period provided by law. If required to account as a committee, if they are in fact individually before the court, as we hold they are, the court can fully protect them as a committee from themselves in their individual capacity, as well as from all other parties to the action. The seeming absurdity of so protecting them from themselves will disappear in

any case in which the purchasers are different persons from those comprising the protective committee and similarly become parties to the suit and deposit similar funds in the bank account of another party to the suit.

We may and do leave out of consideration the matter of whether the trial court was right in holding that section 161, chapter 40, '35 C. S. A., is applicable to this case, the statute having been passed after the trust deed in foreclosure was executed, though its applicability is not here questioned. It is pertinent to observe in passing, however, that neither Holman, Block, and Browne, individually or as a protective committee, nor the Rockhill Company, nor the new company, The Norman, Inc., are contending or can contend over rights that have their origin in the trust deed. The rights of Holman, Block, and Browne as a protective committee arose out of a contract executed in 1932. The rights of the others arose out of their voluntary entry into the foreclosure proceedings after section 161, supra, was passed. Holman, Block, and Browne entered the proceedings as purchasers at the foreclosure sale; the Rockhill Company and The Norman, Inc., entered the proceedings respectively as redemptioner and assignee of the certificate of redemption at the time of the issuing of the special master's deed. Apart from the statute, the petitioners, the Rockhill Company and The Norman, Inc., are entitled, assuming the truth of the facts alleged in their petitions and which, for the purposes of the demurrers, are admitted, to the accounting prayed for. Had the property been sold under the first of the alternatives provided in the decree for sale it may be conceded that the redemptioners would have no claim upon equitable grounds for the rents and use of the property during the redemption period or for an accounting against whosoever might have received them. Neither would they have been required to pay $10,000 additional with interest for the period of redemption in order to redeem the property. But the record presents a far different situation from

the assumed case. We should bear in mind that there was no receivership by which the rents were impounded, as in *Traer v. Fowler,* 144 Fed. 810 (Eighth Circuit Court of Appeals), cited by defendants in error, wherein the court held that the redemptioners acquired no right to such rents until the expiration of the period of redemption, even though the mortgagor assigned the rents and profits as security for the debt. In that case the court said: "The mortgagor or judgment debtor has the right of possession and the right to the rents and profits of the mortgaged property during the period of redemption. The title which vests in the purchaser at the expiration of that period, in the absence of redemption, relates back to the beginning of his lien to cut off intervening incumbrances, but it does not divest the mortgagor or judgment debtor of his right to the possession and to the rents and profits of the property sold during the period of redemption." Counsel for defendants in error say at page 55 of their brief: "This is the identical foundation of our position." The statements immediately following negative the similarity of the two cases. They continue: "The right to the rents and profits during the period of redemption passed, not by the foreclosure sale, but by the October 12, 1932 contract, to the Committee, and thence by transfer, under court order, to the Joint Purchasers. The foreclosure sale did not affect them and a redemptioner cannot claim them."

Assuming, as defendants in error contend, that the rents did not pass by the foreclosure sale, the court had no authority to provide in the decree for sale that the purchasers should bid at least $10,000 for them at the sale and pay that much, in addition to their bid for the property that could be passed at foreclosure sale, for an assignment of the trustee's interest in the rents that grew out of a contract of October 12, 1932, that had no connection with a foreclosure suit in 1935. It is alleged and admitted for the purposes of the demurrers that during the period of redemption Holman, Block, and

Browne collected approximately $10,600 in net rents which they deposited in an account opened by them after they purchased and that other rents were collected during the redemption period which they placed in their bondholders' protective committee bank account. They assert that they are not obliged to account in their capacity as a bondholders' protective committee, because the rents did not pass to them by the foreclosure sale, but by virtue of the International Trust Company's assignment of its equitable interest in the rents collected under the contract of October 12, 1932. Under this contract they originally had a right to collect in their fiduciary capacity as a bondholders' committee for the benefit of the International Trust Company, as trustee for the bondholders. This right to receive the rents for the bondholders, the International Trust Company assigned to them, Holman, Block, and Browne, individually, when they bid in the property and the rents. In their answer they reqognized their function as members of the bondholders' committee to be to collect the rents, pay the taxes and current expenses, and then pay the balance "if any to the plaintiff [International Trust Company] trustee *for the benefit of its bondholder beneficiaries.*" In the answer they offered "to assign the rents and use thereof during the period of redemption, or until redemption be made." To all intents and purposes the money received under the contract of October 12 by which the mortgagor debtor authorized them to collect the rents, was the corpus of their trust. It was a separate piece of property, the equitable owners of which were the first mortgage bondholders. It was worth more than $10,600, according to the allegations of the complaint, during the period of redemption, and to obtain it along with the Norman Apartments, Holman, Block, and Browne, paid $10,000 more than they would have paid for the Norman Apartments without it. The transaction, if the contract did not pass by foreclosure, and defendants in error say it did not, but by a collateral

arrangement, approved by the court, between the trustee for the bondholders and the members of the protective committee in their individual capacity, is exactly analogous to a case of a mortgage being foreclosed on a residence property with an upset price of $1,500 fixed on the residence alone and of $2,000 if the foreclosing mortgagee includes a corner lot adjoining. The bidder pays $2,000 and gets a certificate of purchase for the residence property by virtue of the foreclosure and a warranty deed for the lot from the mortgagee. Next day he sells the lot for $750 and when the holder of the second mortgage on the residence property comes along to redeem and asks, "How much must I pay to redeem?" he replies, "Two thousand dollars and interest for the period of redemption at the legal rate *on the full amount.*" In such a case natural justice requires either that the lot be turned over when the redemption money is paid or that the additional amount bid, because of its inclusion in the purchase or the amount received from the sale of it, be so accounted for as will most nearly work equity. A chancellor should never hesitate to direct that equity be done in a case before him whenever natural justice requires it; if he finds no precedent for so doing he should establish one.

The district court should have overruled the demurrers and required Holman, Block, and Browne, as a protective committee, to answer.

The judgment is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

Mr. Chief Justice Hilliard and Mr. Justice Knous concur.