**NORMAN APARTMENTS, Inc., v. INTERNATIONAL TRUST CO. et al.**

**No. 12078.**

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1941.

Rehearing Denied Feb. 4, 1942.

Arthur R. Morrison, of Denver, Colo. (Charles B. Turney and Harding, Murphy & Tucker, all of Kansas City, Mo., on the brief), for appellants.

James S. McClellan, of St. Louis, Mo. (Chasnoff, Willson & Cunningham, of St. Louis, Mo., and Walter W. Blood, of Denver, Colo., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a final order and decree making disposition of certain funds deposited in the registry of the court pur-

suant to decree on bill of interpleader filed by the Colorado National Bank, of Denver, Colorado. The lower court awarded the funds to appellee, the International Trust Company, as trustee, with authority and direction to pay out of the funds so received by it, the expenses of litigation, and to distribute the balance pro rata to the holders of certain bonds therein described. The appellants, who were claimants to said funds have appealed, and the ultimate question to be determined is whether the court erred in its disposition of the funds so deposited in its registry. A statement of certain facts leading up to the filing of the bill of interpleader by the Colorado National Bank is necessary to an understanding of the issues presented.

On August 15, 1923, William N. Bowman and Alice M. Bowman executed a deed of trust to the International Trust Company covering certain real estate in Denver, Colorado, on which structures, called the Norman Apartments, were later erected, to secure the payment of a bond issue amounting to $350,000. The trust deed mortgaged not only the real estate, buildings, improvements, and appurtenances, but also "all the rents, uses and privileges thereof, which are hereby assigned" and all personal property contained in the buildings. On October 12, 1923, the property was sold and conveyed to the Norman Apartments, Inc., which assumed and agreed to pay the encumbrance. On October 12, 1932, a contract was entered into between the Bowmans, the Norman Apartments, Inc., and certain individuals constituting a bondholders' committee. This contract recited that defaults had been made in the payment of interest on the bonds, in the payment of certain maturing principal, and in payment of taxes. It also contained recital that the parties believed that the income and rents from the property should be transferred to a depository satisfactory to all parties, to be paid out only upon the joint signature of a resident manager of the apartments and a representative of the bondholders' committee for the following named and no other purposes: "First: To pay the current bills for operating expenses of said Norman Apartments, Inc. * * * Second: To pay taxes and special assessments against the said property * * *. Third: To pay the balance, if any, to the Trustee under the said mortgage or deed of trust, for the benefit of its bondholder beneficiaries, as and when there shall be any balance available therefor." It was provided that the agreement should remain in force as long as the trust deed was unpaid or until the encumbrance against the property should be refinanced, or there should be "a foreclosure of said first encumbrance and the expiration of all rights of redemption therefrom, unless all rights of redemption be waived and relinquished." The Colorado National Bank of Denver was designated as the depository.

On November 1, 1932, the trust company, as trustee, declared all of the unpaid bonds secured by the deed of trust to be due and payable immediately, and on November 28, 1932, it commenced suit in the state court of Colorado to foreclose the trust deed. On July 15, 1935, a decree of foreclosure was entered, following which the Norman Apartments, Inc., filed a petition in bankruptcy for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The sale under foreclosure was temporarily restrained, but the restraint was lifted and the property was sold to C. L. Holman, Lynton T. Block and Warren Browne, who constituted the bondholders' committee, as joint tenants and not tenants in common. The decree of sale provided for an upset price of "not less than the sum of $150,000 if the said sale include the said rents and use during the period of redemption, or until redemption be made, or for not less than the sum of $140,000 if such sale be without such rents and use." The decree also provided that the bondholders' committee should hold the funds in its hands subject to the terms and provisions of the written contract.

The report of the Special Master making the sale indicates that the property sold included the rents and use during the period of redemption, or until redemption should be made, and that the purchase price was $164,000. The report further shows that the bidders informed the Special Master with respect to the condition of their bid, which included the rents and use of the property during the period of redemption, and that they would accept the net rents, issues and profits, after the payment of current bills and operating expenses, taxes and special improvement assessments arising from the date of the confirmation, and would accept an assignment of all beneficial interests, subject to confirmation date, from the bondholders' committee and a release of interest by the trustee including its bondholder beneficiaries in the contract.

The report of sale was approved and the order of approval directed that upon payment of the bid price the trustee and its beneficiaries should be considered to have released and the trustee was directed to release and the bondholders' committee was authorized and directed to assign to the purchasers at the foreclosure sale, all their interest in the contract to all said rents, issues and profits of the foreclosed property arising and accruing from and including December 1, 1935, during the period of redemption, or until redemption should be made. The order confirming the sale provided that the committee should pay to the trustee, the International Trust Company, and that it in turn should distribute pro rata to holders of bonds, all money held pursuant to the contract of October 12, 1932, after paying proper items of expenses. A deficiency judgment of approximately $150,000 remained.

Pursuant to the contract of October 12, 1932, an account was set up in the Colorado National Bank, under the heading "Bondholders' Protective Committee for Norman Apartments, Inc.," and the rents collected prior to December 1, 1935, were deposited in that account. This account is designated by the parties as "Account No. 1," so as to distinguish it from the new account which was set up in the bank immediately following the sale, in which rents accruing after the sale were deposited, this account being referred to as "Account No. 2."

The Rockhill Improvement Company, representing the second mortgage bondholders, presented to the bankruptcy court a plan of reorganization of the debtor Norman Apartments, Inc. Under the terms of this plan, the mortgaged property was to be redeemed from the foreclosure sale and title vested in a new corporation. The plan was approved and subsequently carried out. The Rockhill Improvement Company then redeemed from the foreclosure sale and title to the property was vested in the Norman, Inc., a new corporation organized for that purpose.

Paragraph 7 of the reorganization plan provided that "it shall in no way be considered to affect the rights of any creditor of said Norman Apartments, Inc., or any stockholders therein, to any asset of the Norman Apartments, Inc., or to the application thereof or the proceeds therefrom to the payment of any such claim." On January 14, 1936, the referee in bankruptcy entered an order that Account No. 1 belonged to the bondholders' committee for disbursement to the trustee under the first trust deed. The Rockhill Improvement Company filed objections, and on January 23, 1936, the bankruptcy court entered an order as follows:

"That the said petition of the International Trust Company, Trustee, and the Bondholders Protective Committee is hereby granted, and the said Bondholders' Committee is hereby authorized to pay to the International Trust Company, Trustee, all money held by them with their depositary pursuant to the said contract."

On May 24, 1938, the bankruptcy court entered an order in the reorganization proceedings as follows:

"It is Therefore Ordered, Considered and Adjudged, That the orders, decrees and findings of this Court in the above entitled proceeding are in all things confirmed and approved.

"That the above entitled proceeding be and the same is hereby dismissed out of this Court."

The Norman Apartments, Inc., then filed a petition to set aside this order, but the court ordered its petition stricken from the file and held that the order was a final decree within the meaning of Section 77B, sub. h.

On September 4, 1931, the George Tritch Hardware Company secured judgment against the Norman Apartments, Inc., in the District Court of the City and County of Denver, Colorado, in the sum of $2,677 and costs, which judgment was assigned to B. B. Fisher. Execution issued on this judgment on the 18th of September, 1935, and garnishment in aid of execution was issued against the Colorado National Bank of Denver, Colorado, and B. F. Englander, the resident manager of the Norman Apartments. The trial court held that no part of the funds deposited under the contract or in the hands of Englander, was subject to garnishment, but on appeal the Supreme Court of Colorado reversed. Fisher v. Norman Apartments, Inc., et al., 101 Colo. 173, 72 P.2d 1092. The case was remanded to the trial court and after judgment against the Colorado National Bank and Englander as garnishees, the International Trust Company and the bondholders' committee appealed to the Supreme Court of Colorado. The judgment of the trial court was affirmed. Holman v. Fisher, 105 Colo. 363, 98 P.2d 289. The Fisher judgment

458

was satisfied. All operating expenses and taxes were paid out of Account No. 1, as provided by the contract. The balance was paid into the registry of the United States District Court for the Eastern District of Missouri by the Colorado National Bank of Denver, and it thereupon filed its bill of interpleader in that court, making all those claiming an interest in the fund parties. As has already been noted, the lower court awarded the funds to the International Trust Company as trustee under the first deed of trust and the Norman Apartments, Inc., Rockhill Improvement Company and the Norman, Inc., prosecute this appeal from that judgment.

The Norman Apartments, Inc., contends that Account No. 1 should have been awarded to it. The Rockhill Improvement Company and the Norman, Inc., contend that there was deposited in this Account No. 1 a considerable sum of money which represented rents paid by the tenants in the apartment building subsequent to December 1, 1935, the date of sale, and that these funds belonged to them.

The rights of the International Trust Company, trustee, and of the bondholders' committee are bottomed on the provisions of the trust deed, the contract of October 12, 1932, entered into by the Norman Apartments, Inc., and the bondholders' committee, the order of the Colorado State District Court confirming the foreclosure sale, and the order of the bankruptcy court in the District of Colorado directing that the funds in question be turned over to the International Trust Company, as trustee. At the very threshold of this controversy, we are confronted with the contention that the issues presented to and determined by the lower court had theretofore been adjudged and determined adversely to the claims of the International Trust Company, trustee, and the bondholders' committee, by the highest court of the State of Colorado, where the controversy first arose. It is therefore necessary to consider the nature of the controversy presented to the Supreme Court of Colorado and the scope and effect to be given to its decision. It should not be given any wider effect than was attributed to it by the court itself. There was presented to the Supreme Court of Colorado a controversy between two creditors, one a judgment creditor who had in effect seized under execution the funds in the hands of the resident manager, Englander, and in the hands of the Colorado

National Bank, and the other a contract creditor, the bondholders' committee. This seizure was effected by virtue of a judgment against Norman Apartments, Inc., dated April 4, 1931, and the seizure under the garnishment proceeding was had prior to the sale under the decree of foreclosure, and prior to the bankruptcy proceeding.

Fisher, the judgment creditor, was not a party to either the foreclosure suit or the bankruptcy proceeding. Neither was he a party to the contract of October 12, 1932. As has been pointed out, his judgment antedated all these proceedings, as well as the contract. In Fisher v. Norman Apartments, 72 P.2d 1092, 1097, the court in its opinion considered the provision of the trust deed executed by the Bowmans, with reference to the rents and profits arising from the mortgaged property, and it set out in haec verba the contract of October 12, 1932. The court pointed out that under the provisions of this contract, B. F. Englander, one of the garnishees, who held funds in the amount of $1,400 collected as rent from the Norman Apartments, was continued in the employ of the Norman Apartments, Inc., the judgment debtor, as resident manager of the mortgaged property, and observed that "as such resident manager he shall act as agent for the Norman Apartments, Inc., and shall be one of the signers of all checks drawn on the funds deposited with said depository hereinabove referred to." It was he who collected the rents and was authorized to make certain expenditures out of the funds so collected. It was pointed out that the contract expressly provided that it should be construed as made for the benefit of the Bowmans, Norman Apartments, Inc., and the bondholders' committee, and that it contained no provision that it should be construed as made for the benefit of the trustee in the trust deed. In the course of the opinion, the court, among other things, said:

"It is not necessary to determine under the issues of this case, and we do not determine, whether a mortgagee who has a passive lien on the rents by virtue of their assignment in the mortgage may, by assignment from the mortgagor, obtain a right to the rents superior to that of other creditors of the mortgagor. The contract here involved did not constitute an assignment of such rents, for it left the right to collect them in the mortgagor, the Norman Apartments, Inc., and gave no right to the bondholders' committee to collect them.

The contract relates merely to the future disposition of the rents after the mortgagor, still in the exercise of his right under the passive lien of the mortgagee, has collected them."

Responding to the contention of the bondholders' committee that the funds held by it were trust funds, the court said: "If the funds in the hands of the bondholders' committee were held in trust, they were so held as much for the Norman Apartments as for the other parties to the contract or for the trustee under the deed of trust. They had not been applied to the payment of the bonds and no preference of creditors by payment had been made. The contract itself did not constitute a preferred payment; it was but the means by which a preference was intended later to be effected. * * * Such of the funds in the hands of the committee as were to be used for paying current bills of the Norman Apartments, Inc., were held in trust for the Norman Apartments."

Again the court said: "It was only by virtue of the contract that the court assumed to direct that such payments be made. Before they were made the garnishment was served. To the amount of the funds in its hands that it was obligated to pay on the current bills of the Norman Apartments, Inc., there can be no question that the bondholders' committee had funds in its hands belonging to the Norman Apartments and after garnishment it would pay such current creditors at its peril; * * *."

Referring to the status of the resident manager, the court said: "The money in the hands of Englander, who, so far as the contract and record discloses, had no other status than that of agent of the Norman Apartments, Inc., was the money of his principal and subject to garnishment by a judgment creditor of his principal. He was not holding it for the bondholders' committee. He was not obligated to take orders as to its disposition from the committee. His duty was to his principal. If he had refused to pay it to the bondholders' committee, its recourse on the contract was against the Norman Apartments, Inc., and not against Englander. If it had so proceeded and procured judgment against the Norman Apartments, Inc., for the money the latter had agreed to pay it under the contract, it would be absurd to contend that on its judgment for breach of the contract it could not reach the $1,400 in the hands of Englander, its judgment debtor's agent, by a garnishment served on him."

It is observed that the Supreme Court of Colorado meticulously limited its decision to the rights of the judgment creditor as against the garnishees and did not attempt to adjudicate the rights or liabilities of the parties to the contract between themselves. The contest which was presented to the Supreme Court of Colorado was distinctly one between creditors of the Norman Apartments, Inc. The present controversy goes to the rights of the creditor bondholders' committee against its debtor, Norman Apartments, Inc. It is noted that the decree in the foreclosure suit ordered only that the "net rents" be paid to the trustee after deducting from the gross rents all current bills, operating expenses, taxes, and "after deducting also and paying or making provision for payment of such other and further sum therefrom as the court may direct," and the contract provided for the payment to the trustee of "the balance, if any," for the benefit of its bondholder beneficiaries. The Supreme Court of Colorado held in effect that on September 18, 1935, the funds in the hands of Englander and the gross rents in the hands of the bondholders' committee, as distinguished from the net rents, or "the balance, if any," were subject to garnishment because such gross rents as were in the hands of the committee were in part held for the use and benefit of the Norman Apartments, Inc., and that decision must be accepted as conclusive (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487) but it did not decide the issues which were determined by the lower court and which we are here asked to decide.

The Supreme Court of Colorado, in its opinion in Norman, Inc., v. Holman, 105 Colo. 294, 97 P.2d 739, 740, decided two years subsequent to Fisher v. Norman Apartments, supra, said: "We assume the net proceeds up to that time [Dec. 1, 1935] were accounted for to the trustee for the first mortgage bondholders."

 Nothing in either of the opinions of the Supreme Court of Colorado reflects on the validity or binding effect of the contract of October 12, 1932, as between the parties thereto. It held that the contract did not preclude judgment creditors of the Norman Apartments, Inc., from reaching the gross rents collected for the Norman Apartments by garnishment. The net pro-

ceeds as distinguished from the gross rent collections have been disposed of by the court in harmony with the contract as construed by the Supreme Court of Colorado. The funds deposited represent the net proceeds, and under the contract, quite aside from the decree of foreclosure and the order of the bankruptcy court, they belong to the International Trust Company as trustee for the benefit of the bondholders. We are of the view that the court did not fail to give full faith and credit to the judgment of the Supreme Court of Colorado.

The lower court found that all funds deposited in Account No. 1 represented the net income of the mortgaged property accruing and earned prior to December 1, 1935. That finding, we think, is sustained by the evidence. The Norman, Inc. and the Rockhill Improvement Company assert that some of these funds were collected subsequent to that date. The date of collection is, of course, not material, the date of accrual being controlling.

The judgment appealed from is therefore affirmed.